No. 99-586

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 68N

IN RE THE MARRIAGE OF

PATRICIA S. HUNT,

Petitioner and Respondent,

and

KENNETH P. GARDNER,

Respondent and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Jefferson,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Mark P. Yeshe, Attorney at Law, Helena, Montana

For Respondent:

John L. Hollow, Attorney at Law, Helena, Montana

_____

Submitted on Briefs: March 2, 2000

Decided: March 16, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

1. ¶Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

2. ¶Appellant, Kenneth Gardner (Gardner) appeals from the decree of dissolution entered by the Fifth Judicial District Court. In particular, he appeals from the court's distribution of real estate purchased with co-mingled funds. The real estate consists of 155 acres and an adjoining five acres with a house.

3. ¶The court found that although the parties did not perform a wedding ceremony until August 1997, they had known each other for years, had co-habited and had a relationship which resembled a business venture in many respects. The District Court concluded that there was, on balance, equal contribution towards acquisition of the 155 acres plus the house and five acres. Accordingly, the court awarded the house plus twenty acres to Patricia Hunt (Hunt) and the remaining 140 acres to Gardner.

4. ¶The District Court stated that it was resolving the matter as a dissolution proceeding and then found:

Hunt was the principal financial contributor. Gardner's contribution resulted from utilizing the tax free exchange procedure in his close relationship with the Seller to effect what proved to be a sound investment for both parties. On balance, the Court finds equal contributions. There was credible evidence to substantiate Hunt's claim to the house and 20 acres. While much of this evidence was oral, the Court finds sufficient part performance, and other evidence to overcome the statute of frauds.

1. ¶Gardner contends on appeal that it is apparent that the court relied on principles of contract law when it alluded to Gardner's oral promise to Hunt that if the relationship went awry, she would have the house and twenty acres. Gardner argues that this case presents issues as to property distribution under a dissolution of marriage, that contract principles are not relevant, and that his oral promise does not comply with the requirements of the Uniform Premarital Agreement Act, § 40-2-

604, MCA.

2. ¶Although Gardner correctly observes that the court referred to contract principles relating to oral promises and part performance, the court also takes into consideration the factors of source and contribution. These are considerations that come into play in distributing marital property in a dissolution proceeding. *See* § 40-4-202, MCA.

3. ¶Given that the court was confronted with real property acquired four to six months before the marriage ceremony and maintained through the financial contributions of both parties, it is understandable that the court looked to both contract and dissolution law. In any event, since the court did initially purport to resolve the matter on the basis of dissolution law, we will review the matter in that light.

4. ¶This Court reviews the findings underlying a division of marital property to determine if the findings are clearly erroneous. In re Marriage of Rock (1993), 257 Mont. 476, 479-80, 850 P.2d 296, 298. It is not the lack of specific findings which constitutes reversible error, but the lack of substantial evidence to support the judgment. This Court looks to both the district court's express reasoning and the evidence in the record to determine whether ample evidence exists. In re Marriage of Hundtoft (1987), 225 Mont. 242, 244, 732 P.2d 401, 402 (citation omitted).

5. ¶The question presented is whether there is substantial evidence in the record to support the District Court's conclusion that there was, "[o]n balance, . . . equal contributions." Gardner contends that Hunt has attempted to make the District Court's decision something it is not--that is, a determination that Hunt was entitled to a certain percentage of the appreciated value. We agree with Gardner that the court did not analyze the matter in terms of appreciated value. This is not surprising given that, with regard to the 155 acres, the appreciation in value was not due to the efforts or contributions of the parties or improvements to the land but the result of increased land values in general. What matters however, is not how Hunt has characterized the District Court's decision, but what, in fact, the District Court did. Although the District Court's findings and conclusions are minimal, it is apparent that the District Court was looking at contributions towards the purchase and maintenance of the properties, not the post-marital appreciation in value. We find that there is substantial evidence to support the finding of essentially equal contribution towards purchase.

6. ¶The record regarding contribution towards acquisition of the properties is very confusing. A few points are clear: that the 155 acres were acquired by having Gardner make a down payment through a tax-free exchange involving Gardner's Helena rental property and with Hunt paying the closing costs. The 155 acres were

initially deeded to Gardner alone. He later signed a quitclaim deed to the two of them as joint tenants with right of survivorship in June of 1998. In April of 1997, Hunt made the down payment on the purchase of the house and five acres but the deed was to both Hunt and Gardner. Hunt made all the payments on the house through August of 1997 at which time Gardner started to contribute. Payments on the land contract were made from a joint account to which both parties contributed.

7. ¶Although there are disputes as to who contributed the most or exactly how the co-mingled money was accounted for, substantial evidence supports the conclusion that Hunt made significant contributions towards the acquisition and maintenance of the 160 acres and home and that a distribution of 140 acres to Gardner and 20 acres with the house to Hunt was not inequitable. We conclude that the District Court's findings are not clearly erroneous.

8. ¶The judgment is affirmed.

/S/ W. WILLIAM LEAPHART


We concur:


/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER